# EXHIBIT A




AlaFile E-Notice

27-CV-2017-900032.00

To: SSC SELMA OPERATING CO, LLC
C/O CT CORPORATION SYSTEM
2 N JACKSON ST, STE 605
MONTGOMERY, AL, 36104

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF DALLAS COUNTY, ALABAMA

RUBY KINNEY ET AL V. SSC SELMA OPERATING CO, LLC
27-CV-2017-900032.00

The following complaint was FILED on 2/17/2017 10:50:21 AM

Notice Date: 2/17/2017 10:50:21 AM

CHERYL STRONG RATCLIFF
CIRCUIT COURT CLERK
DALLAS COUNTY, ALABAMA
DALLAS COUNTY COURTHOUSE
P.O. BOX 1148
SELMA, AL, 36702

334-874-2523
cheryl.ratcliff@alacourt.gov


ELECTRONICALLY FILED
2/17/2017 10:50 AM
27-CV-2017-900032.00
CIRCUIT COURT OF
DALLAS COUNTY, ALABAMA
CHERYL STRONG RATCLIFF, CLERK

**IN THE CIRCUIT COURT FOR DALLAS COUNTY, ALABAMA**

| | | |
|---|---|---|
| **Ruby Kinney individually and Jeanette Curry in her capacity as attorney-in-fact and next friend of Ruby Kinney,** | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| **v.** | ) | ____________ |
| **SSC SELMA OPERATING COMPANY LLC, and Fictitious Party Defendants A, B, C, and D,** | ) | **Jury Demanded** |
| **Defendants.** | ) | |

**COMPLAINT**

Come Now RUBY KINNEY, individually and JEANETTE CURRY, as daughter and in her capacity as attorney-in-fact and next friend of RUBY KINNEY, (hereinafter "Plaintiff"), and presents this Complaint for Damages against Defendant SSC SELMA OPERATING COMPANY, LLC d/b/a WARREN MANOR HEALTH AND REHABILITATION CENTER and FICTITIOUS PARTY DEFENDANTS A, B, C AND D, as follows:

**Statement of Jurisdiction and Venue**

1. Plaintiff Ruby Kinney is an individual over the age of nineteen (19) years and is a resident of Dallas County, Alabama. Jeanette Curry is the daughter of Ruby Kinney and brings this lawsuit on behalf of Ruby Kinney in her capacity as her attorney-in-fact and next friend pursuant to a valid general durable power of attorney executed by Ruby Kinney on March 9, 2012. At all times material to this lawsuit, Ruby Kinney was a resident of Defendant, Warren Manor Health and Rehabilitation Center located in Selma, Dallas County, Alabama.

2. Defendant SSC SELMA OPERATING COMPANY LLC owns, operates, manages, and does business as "Warren Manor Health and Rehabilitation Center" and is a

foreign limited liability company existing and doing business pursuant to the laws of the state of Alabama with its principal place of business located in Selma, Dallas County, Alabama. At all times material to this lawsuit, Defendant owned, operated and managed a long-term skilled nursing care facility known as Warren Manor Health and Rehabilitation Center located at 11 Bell Road, Selma, Alabama. Defendant may be served upon its duly registered agent for service of process, CT Corporation System, the registered agent and its duly registered office is located at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

3. Fictitious party defendants "A," "B," "C," and "D" are individuals and/or entities that own, operate and/or manage Warren Manor Health and Rehabilitation Center in which Ruby Kinney is a resident. They include those entities that owned, managed or operated Warren Manor at the times relevant hereto; and/or the true names of those entities; and/or those persons or entities whose breaches of the standard of care caused or contributed to Ruby Kinney's injuries and damages; and/or the employer(s) or principals of any of those persons whose breaches of the standards of care caused or contributed to Ruby Kinney's injuries and damages. The true identities of these fictitious party defendants are currently unknown to plaintiff and plaintiff reserves the right pursuant to the *Alabama Rules of Civil Procedure* to amend this Complaint when the true identities of said fictitious party defendants become known.

4. Jurisdiction is proper in this Court in that Defendant is a resident citizen of Dallas County, Alabama and Ruby Kinney is a resident citizen of Dallas County, Alabama. Venue is proper in this Court in that the Defendant and Ruby Kinney are located in Dallas County, Alabama and all of the acts and omissions giving rise to the injuries and damages complained of in this Complaint for Damages occurred and/or arose in Dallas County, Alabama.

**Factual Allegations**

5. Ruby Kinney ("Ms. Kinney") became a resident of Defendant Warren Manor Health and Rehabilitation Center ("Warren Manor") on or about June 12, 2015. Due to declining physical and mental health, Ms. Kinney at all times during her residency, required round the clock skilled nursing, care, treatment and supervision.

6. On September 18, 2015, Progress Note notes no documentation of any skin breakdown.

7. On September 19, 2015, Dr. Malcolm Brown was notified of Stage II pressure sore to the left heel 3 cm X 3 cm. Physician orders were to use heel pads to both feet and float on pillows while in bed.

8. On September 20, 2015, the treatment authorization request reflects daily monitoring of pressure ulcer on left hand, assigned to the 7:00 a.m -3:00 p.m. shift.

9. On September 21, 2015, Progress Note by CRNP to clean left heel with wound cleanser, pat dry, and apply granules daily and as needed.

10. On September 28, 2015, Progress Note shows no documentation regarding any skin breakdown.

11. The September 29, 2015 weekly pressure ulcer record documents an unstageable 4.2 cm X 4.5 cm red, black wound that has increased in length and width, continue to monitor. Continue treatment with granules daily.

12. Weekly pressure ulcer record dated October 6, 2015 records an unstageable 4.4 black wound bed. The area decreased in length, same width, bed black hard eschar. Continue same treatment with granules to monitor. Specialty interventions include positioning pillows, and heel pads.

13. On October 12, 2015, the weekly pressure ulcer record documents an unstageable 4.4 black wound bed. Area decreased in length, same width wound bed black hard eschar. continue same treatment with granulex and continue to monitor. Special interventions include positioning devices, pillows and heel pads.

14. On October 19, 2015, the weekly pressure ulcer record documents 2X2.5 cm black wound bed. Pain related to wound is marked yes on pain management flow sheet. Continue treatment with granulex and continue to monitor. Specialty interventions include positioning device, pillows and heel pads.

15. On October 29, 2015, Ms. Kinney was admitted to Vaughn Regional Medical Center with pneumonia. Weekly PU record documents an onset date of 10/19/15 on left heel 4 cm X 3.2 cm unstageable serous exudate, red wound bed. Nursing admission intake notes Braden scale of 13 and pressure sore Stage IV. Image marked and noted to have unstageable ulcer to left heel 4 cm X 3.2 cm. Redness to second toe left foot and great toe left foot. doctor notified of excoriation to buttocks.

16. Progress Note dated November 2, 2015 shows no documentation by CRNP about pressure ulcer to left foot.

17. On November 5, 2015, the Nursing Daily Skilled Summary notes skin problems materializing on the left leg area.

18. On November 7, 2015, the head to toe skin check note left heel being treated. 11/7/15 left heel note

19. Weekly pressure ulcer record dated November 9, 2015, records left heel unstageable 3 cm X 3.5 cm unable to measure depth, serosanguinous exudate, small amount of

exudate, black wound bed with area increased in size, round bed black soft eschar. Pain related to wound noted.

20. On November 10, 2015, Ms. Kinney was transferred to Vaughn Regional Medical Center, she was having seizure like activities. CRNP was notified on November 10, 2015 and patient was transported to the hospital.

21. On November 11, 2015, Ms. Kinney was transferred to Vaughn Regional Medical Center for dehydration and altered mental status. Areas of skin compromise marked on image to left heel.

22. Consult note by Dr. Richard Johnson dated November 11, 2015, patient was found to have decubitus ulcers on the small of the back, bilateral heels but especially worse on the left heel. Assessment notes at least a stage I or II decubitus ulcer on the left heel, stage II on the sacrum and possibly stage I or II on the sacrum.

23. On November 12, 2015, wound care nurse Barbara Roberts assessed the wounds and notes unstageable pressure ulcer on left heel, necrotic 4.0 cm X 5.2 cm with black and blue tissue covering the heel. Unstageable ulcer on right heel, more intact than right but malodorus a well. Wound is 2.0 cm X 3.5 cm. Patient turned and skin tear noted at right gluteal fold. Patient complained of much pain when Nurse Roberts attempted to remove the barrier cream from inner buttock cheeks.

24. On November 13, 2015, Ms. Kinney underwent incision, drainage and debridement of skin.

25. On December 10, 2015, Ms. Kinney was discharged home with diagnosis that included acute on chronic leg wound with left heel osteomyeliti; multiple decubitus ulcers including sacrum with bedbound condition.

26. Ms. Kinney received home health care including wound care and has shown improvement since being cared for at home with family members.

## COUNT I - ALABAMA MEDICAL LIABIITY ACT

27. SSC Selma Operating Company, LLC d/b/a Warren Manor Health and Rehabilitation Center is a licensed and certified long-term care facility that provides skilled nursing care as a participant in the Medicare program and that provides nursing care as a participant in the Medicaid program; Warren Manor Health and Rehabilitation Center receives funding under the Medicare and Medicaid programs.

28. The U.S. Department of Health & Human Services has promulgated a number of regulations pursuant to its authority under OBRA at 42 USCA § 1395i-3 related to the care, treatment and services provided to residents of skilled nursing facilities participating in the Medicare program and nursing facilities participating in the Medicaid program. Among those regulations are the following:

a) 42 CFR §483.10 and 15(a) provide that the resident has a right to live a dignified existence,

b) 42 CFR §483.13.(c) requires the facility to implement protocols to protect the resident from neglect,

c) 42 CFR §483.13.(c)(2)-(4) requires the facility to investigate all allegations of neglect, and to report the allegations of neglect and the results of the investigation, to the appropriate state agency within 5 days of findings of neglect. The facility must also take appropriate corrective action upon verification of a violation,

d) 42 CFR §483.15 requires the facility to care for its residents in a manner that maintains and enhances the resident's quality of life,

e) 42 CFR §483.15.(e)(1) requires that each resident be provided services in the facility to accommodate their individual needs,

f) 42 CFR §483.20.(b) requires the facility to prepare timely comprehensive assessments of the resident's needs,

g) 42 CFR §483.20.(k) requires the facility to develop a comprehensive care plan to meet the resident's medical, nursing and psychosocial needs identified in the comprehensive assessment,

h) 42 CFR §483.20.(k)(3) requires that services provided or arranged by the facility meet professional standards of quality and be provided by qualified persons,

i) 42 CFR §483.25. requires the facility to provide services to attain and maintain the highest practicable physical, mental and psychosocial well being in accordance with the resident's assessments and Care Plan,

j) 42 CFR §483.25 Ensure that residents do not develop pressure sores and, if a resident has pressure sores, provide the necessary treatment and services to promote healing, prevent infection, and prevent new sores from developing.

k) 42 CFR §483.25.(k)(7) requires the facility to provide the resident proper foot care and treatment,

l) 42 CFR §483.30. requires the facility to maintain an adequate nursing staff, and to provide a properly qualified nursing staff,

m) 42 CFR §483.40.(a) requires the facility to ensure that each patient's medical care is supervised by a physician,

n) 42 CFR §483.40. requires the facility to keep the resident's treating physician informed of their medical condition,

o) 42 CFR §483.40.(d) requires the facility to provide or make available emergency medical care to residents at any and all times,

p) 42 CFR §483.75. requires that the facility be administered in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well being of each resident,

q) 42 CFR §483.75. requires properly trained, qualified and competent staff,

r) 42 CFR §483.75.(b) requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services, and

s) 42 CFR §483.75.(h) requires the facility to obtain outside services that meet professional standards and principles.

29. As a licensed and certified long-term care facility which receives funding under the Medicare and Medicaid programs, the Defendant long term care facility is subject to the above federal regulations for the provision of care, treatment and services to residents of the facility.

30. As described in this Complaint, the Defendants violated the above regulations of the U.S. Department of Health and Human Services in the following acts and omissions, among others to be demonstrated by the evidence:

a) Defendants failed to administer the nursing facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well being of Ms. Kinney,

b) Defendants failed to implement protocols to protect Ms. Kinney from neglect,

c) Defendants failed to operate and provide services to Ms. Kinney in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

d) Defendants failed to provide or arrange services for Ms. Kinney that met professional standards of quality,

e) Defendants failed to maintain an adequate nursing staff to provide for Ms. Kinney's needs,

f) Defendants failed to provide properly trained, qualified and competent staff to care for Ms. Kinney,

g) Defendants failed to protect Ms. Kinney from neglect,

h) Defendants failed to properly train and supervise the nursing staff to provide the appropriate care, treatment and services that Ms. Kinney needed,

i) Defendants failed to communicate Ms. Kinney's medical conditions to her treating physician,

j) Defendants failed to provide prompt emergency medical treatment to Ms. Kinney when she needed it,

k) Defendants were negligent in all of the acts and omissions described herein,

l) Defendants failed to adequately care plan to reduce or avoid the development of pressure ulcers, caused or allowed avoidable pressure ulcers to develop, failed to timely secure proper medical treatment of the pressure ulcers, and once pressure ulcers were identified, failed to adequately treat them and prevent them from becoming worse.

31. The Defendants' acts and omissions constituting violation of the above-referenced federal regulations at 42 CFR §483.1 et seq. constitute breaches of the applicable standards of care as practiced in the medical community and as mandated by state and federal, statutes, rules and and regulations.

32. Defendants' failure to comply with the above state and federal mandates and medical standards of care led directly to and proximately caused Ms. Kinney's serious injury, illness, pain, and suffering.

33. As a result of the Defendants' negligence per se and the resultant damages and harm, the Plaintiff is entitled to an award of damages in his representative capacity as set out below.

34. Plaintiff re-alleges the above paragraphs as if pleaded separately herein.

35. By accepting Ruby Kinney as a resident in its long-term care skilled nursing facility, defendant Warren Manor and fictitious party defendants by and through its agents, servants and/or employees undertook a duty to provide competent care, treatment and supervision to Ms. Kinney in accordance with the applicable standards of care and in accordance with state and federal regulations and the applicable medical standards of care.

36. All named and fictitious party defendants breached their duty to Ms. Kinney to provide her with competent care, treatment and supervisions in the following particulars:

a. Defendants failed to properly care plan for, care for, treat, supervise, monitor and/or assess Ms. Kinney's physical and mental condition including her risk for developing pressure ulcer and the actual development of pressure ulcers;

b. Defendants failed to provide Ms. Kinney the level of care, treatment, assessment, monitoring and supervision necessary and required by her plan of care and necessary and required by Ms. Kinney's physical and mental level of acuity;

c. Defendants failed to provide Ms. Kinney with a safe and protective environment by failing to follow her plan of care and by failing to provide the level care, treatment, assessment, monitoring and supervision necessary and required by Ms. Kinney's physical and mental level of acuity;

d. Defendants failed to properly communicate with Ms. Kinney's family and with her physician in a manner as required by state and federal regulations regarding her true physical and mental condition and/or a change in condition that necessitated and/or required immediate medical attention;

e. Defendants failed to staff their facility with sufficient numbers of nursing and other personnel necessary to supervise, monitor, care for and provide treatment to Ms. Kinney;

f. Defendants failed to properly train their nursing staff including those CNAs, nurses or other personnel providing care, treatment and supervision to Ms. Kinney in a manner that would prevent pressure ulcers, promotes healing, prevent infection, and prevent new sores from occurring.

g. Defendants failed to properly train, manage, and supervise their nursing staff including those CNAs, nurses or other personnel providing care, treatment and supervision to Ms. Kinney in a manner that would prevent pressure ulcers, promotes healing, prevent infection, and prevent new sores from occurring; furthermore, defendants failed to provide adequate staffing which proximately caused or contributed to failure of delivery of sufficient services such as turning the patient, floating the heels, and providing other treatment and following practices that would prevent or treat pressure ulcers.

h. Defendants failed to assign to Ms. Kinney, CNAs, nurses and other personnel with the necessary training and qualifications necessary to provide the level of care, treatment and supervision required by Ms. Kinney's physical and mental condition in a manner that would prevent pressure ulcers, promotes healing, prevent infection, and prevent new sores from occurring.

i. Defendants failed to implement and follow a plan of care that was sufficiently individualized to Ms. Kinney's physical and mental level of acuity and sufficient to provide the level of care, treatment, monitoring and supervision required by Ms. Kinney including but not limited to a manner that would prevent pressure ulcers, promotes healing, prevent infection, and prevent new sores from occurring.

j. Defendants failed to properly and timely provide medical care, treatment, supervision and assessment to Ms. Kinney when it was apparent or should have been apparent to

Defendants' nursing staff that she was at risk of developing pressure ulcers, or actually developing pressure ulcers and otherwise failed to adhere to relevant standards of care and treatment and had suffered an injury to Ms. Kinney in a manner that would prevent pressure ulcers, promote healing, prevent infection, and prevent new sores from occurring.

k. Defendants failed to follow state and federal regulations requiring the facility to report to the state of Alabama incidents or occurrences involving negligence and/or abuse of residents in the facility.

l. Such other particulars as the evidence may show.

37. By negligently failing to properly, adequately and competently care for, provide treatment, monitor, supervise and assess Ms. Kinney as set forth in the preceding paragraphs, and failing to adhere to the applicable standards of care, both named and fictitious party defendants breached the appropriate and applicable standards of care that are exercised by a long-term skilled nursing facility and medical caregivers within the medical community possessing and exercising ordinary and reasonable knowledge and skills and violated the common laws, statutes and regulations of the state of Alabama and the United States that govern the licensure, certification and conduct of long term skilled nursing facilities.

38. As a legal and proximate result of both named and fictitious party defendants' negligent failure to properly, adequately and competently care for, provide treatment, monitor, supervise and assess Ms. Kinney, Ms. Kinney was caused to suffer injuries including, but not limited to a stage II decubitus ulcer on her sacrum, stage I or II decubitus ulcer on her left heel, that required to be treated with incision, drainage and debridement on November 12, 2015.

39. Defendant's actions were characterized by reckless or wanton disregard for Ruby Kinney's health, safety and well being. For these reasons, plaintiff demands punitive damages.

WHEREFORE, in light of named and fictitious party defendants' wrongful conduct as pled herein, plaintiff demands judgment for all damages allowable by law against named and fictitious defendants compensatory and punitive, in an amount to be determined by a jury at trial and any other relief to which the Court deems plaintiff is entitled.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

*/s/ Keith McKerall*
Keith McKerall (MCK044)
Attorney for Plaintiff

**Of Counsel:**

BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Telephone: (205) 930-9091
Facsimile: (205) 930-9054
kmckerall@burkeharvey.com

**Serve Defendant by Certified Mail:**

SSC Selma Operating Company, LLC
Registered Agent:
CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL 36104